IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| RICHARD SHELTON BOYD, § | |
| Plaintiff, § | |
| v. § | Civil Action No. 3:18-CV-1326-L-BH |
| § | |
| DALLAS AREA RAPID TRANSIT, § | |
| Defendant. § | Referred to U.S. Magistrate Judge |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

By standing order of reference dated May 29, 2018 (doc. 5), this *pro se* case has been referred for full case management, including the determination of non-dispositive motions and issuance of findings of fact and recommendations on dispositive motions. Before the Court is *Defendant's Motion to Dismiss for Failure to State a Claim & Defendant's Motion for Judgment on the Pleadings*, filed July 26, 2018 (doc. 13.) Based on the relevant filings and applicable law, the motion should be **GRANTED in part** and **DENIED in part**.

**I. BACKGROUND**

On May 24, 2018, Richard Shelton Boyd (Plaintiff) filed suit against his employer, Dallas Area Rapid Transit (Defendant), for discrimination and retaliation under the Age Discrimination in Employment Act of 1967 (ADEA). (docs. 2; 11.)[1] He is a 74-year-old passenger bus driver who claims that he has endured "ongoing harassment from coworkers and supervisors explicitly related to [his] federally protected status of age, and [Defendant] has taken no action on [the] complaints from [him]." (docs. 2 at 4; 11 at 1.)

Plaintiff alleges that on or about January 2017, a co-worker and his supervisor were making fun of him for being "special" because he needed help accessing a work computer. (doc. 11 at 1.)

---

[1] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

After his supervisor left, the co-worker explained that by calling Plaintiff "special," they were really joking about him being old. (*Id.*) Later in the week, Plaintiff told his supervisor that there was nothing "special" about him. (*Id.* at 2.) He claims his supervisor responded, "That remains to be seen." (*Id.*)

On multiple occasions from January 2017 to February 2017, Plaintiff alleges, a different co-worker was disturbing him while he was resting in the "quiet room." (doc. 11 at 2.) On February 14, 2017, the co-worker cursed at him and threatened to physically harm him. (*Id.*) When he complained about the harassment, a manager instead accused Plaintiff of essentially living in the "quiet room." (*Id.*) After he complained about the manager's response, he was banned from the "quiet room," which Plaintiff contends was disparate treatment because he "require[s] rest due to his age, and all other employees are allowed to use the quiet room for rest." (*Id.*)

On August 28, 2017, a passenger yelled at Plaintiff for not giving him a free bus pass. (doc. 11 at 2.) The passenger continued to insult Plaintiff and called him "an old white motherf*****." (*Id.*) Plaintiff claims he called dispatch for assistance, and a field supervisor and a police officer employed by Defendant arrived at the bus. (*Id.*) Both employees berated him for following company policy and did not give him an opportunity to speak. (*Id.*) He claims the field supervisor commented that Plaintiff "has a lot of problems" and gave the passenger a free bus pass. (*Id.*)

After the incident with the passenger, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) on September 15, 2017, claiming discrimination based on race, age, and retaliation. (doc. 2 at 4.) It alleged only that he was subjected to a disparaging age and race-related comment by a passenger, and that his supervisor "verbally assaulted" him and also threatened him by stating he would meet Plaintiff after his shift to "take care

2

of everything." (*Id.*) Plaintiff further claimed that he had been "subjected to bullying and harassment" by his supervisor and a police officer employed by Defendant. (*Id.*) On the same day, the EEOC determined there was insufficient information to establish violations of the statutes and issued him a right to sue letter. (*Id.* at 2.)

On or about October 21, 2017, Plaintiff's bus came in contact with another vehicle. (doc. 2 at 12.) He claims the event should have been classified as an "incident," but Defendant purposefully misclassified it as a "preventable accident." (*Id.* at 13.) After the classification was affirmed through Defendant's administrative review process on February 16, 2018, Plaintiff filed another charge of discrimination with the EEOC on March 2, 2018, claiming that he had been harassed with a false accident charge and hearing because of his prior EEOC charge. (*Id.* at 9.) He claimed that this was an adverse action that constitutes retaliation "in violation of Section 704(a) of Title VII of the Civil Rights Act of 1964." (*Id.*) As with Plaintiff's first charge, the EEOC determined that there was insufficient information to establish violations of Section 704(a) and issued him a right to sue letter. (*Id.* at 7.)

On March 21, 2018, Plaintiff claims a passenger yelled at him for skipping her bus stop after she rang the bus stop notification bell. (doc. 11 at 2.) He contacted dispatch, and a field supervisor came to the bus and escorted the passenger to her stop. (*Id.* at 2-3.) Plaintiff alleges that when the field supervisor returned, she berated him about his hearing and repeated the passenger's comment about him not hearing the bell due to his age. (*Id.* at 3.) He claims the other passengers did not hear the bell, but the field supervisor "continued to insult [his] hearing ability and threatened to have him replaced with someone capable of hearing the bell." (*Id.*)

Plaintiff alleges that "the EEOC gave approval that these aforementioned offences [sic]

3

merited violation of the [ADEA]" and gave him permission to sue Defendant. (doc. 11 at 3.) He also alleges that his supervisors and Defendant's leadership "have openly stated their determination to end [his] employment or else hinder his performance such that termination would be eminent [sic], as direct retaliation for [his] reporting of harassment." (doc. 11 at 3.) Plaintiff argues that the prior incidents of age discrimination show that his "supervisors and other career decision makers [are] ignoring or outright participating in open age discrimination." (*Id.*) He also claims that he has been prohibited from contacting dispatch "for any reason" by the Head of Dispatch, "[t]he ability to call dispatch is a vital and important tool for employees" and is "essential to [his] job duties," and being banned from contacting dispatch "is disparate treatment under the law." (*Id.*) He also alleges that he is currently facing "investigations into spurious claims of improper bus handling, and the individuals in charge of the outcome of these investigations are the same who have show[n] discrimination against him." (*Id.*)

On June 21, 2018, Defendant moved for a more definite statement, and Plaintiff was ordered to file a response. (docs. 8; 10). He responded on July 11, 2018, and filed an "*Addendum to Complaint.*" (doc. 11.) On July 26, 2018, Defendant moved to dismiss the complaint. (doc. 13.) With a timely-filed response and reply, this motion is ripe for consideration. (docs. 17; 19.)

## II. MOTION TO DISMISS

Defendant moves to dismiss Plaintiff's age discrimination claim as untimely, and his retaliation claim for failure to state a claim upon which relief can be granted under Rule 12(b)(6).[2]

---

[2] Defendant also moves to dismiss Plaintiff's claims of racial discrimination. (doc. 14 at 6.) Although Plaintiff claimed racial discrimination in his EEOC charge, he has not raised any allegations of racial discrimination in his original complaint, his addendum, or in his response to the motion to dismiss. (*Compare* doc. 2 at 4-5 *with* doc. 11.) He has therefore abandoned any race discrimination claims. *See Loomis v. Starkville Miss. Pub. Sch. Dist.*, 150 F. Supp.3d 730, 745 (N.D. Miss. 2015) ("[B]ecause the content of the EEOC charge only sets forth the maximum scope of a Title VII complaint, a plaintiff can waive or abandon properly charged claims of discrimination by failing to plead such claims

4

(doc. 14 at 3,6.)

Rule 12(b)(6) allows motions to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Under the 12(b)(6) standard, a court cannot look beyond the face of the pleadings. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996); *see also Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000). It is well-established that "*pro se* complaints are held to less stringent standards than formal pleadings drafted by lawyers." *Miller v. Stanmore*, 636 F.2d 986, 988 (5th Cir. 1981). Nonetheless, regardless of whether the plaintiff is proceeding *pro se* or is represented by counsel, pleadings must show specific, well-pleaded facts, not mere conclusory allegations to avoid dismissal. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). The court must accept those well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Baker*, 75 F.3d at 196.

"[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citation omitted). Nevertheless, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555; *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasizing that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). The alleged facts must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In short, a complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face."

---

in her complaint."); *Hayden v. Trinity Railcar Repair, Inc.*, No. 1:16-cv-214, 2017 WL 1485499, at *2 n.1 (E.D. Tex. Mar. 30, 2017) (citing *id.*) (declining to consider allegations of age discrimination that was initially raised in an EEOC charge, but not asserted in the original complaint or any other pleading filed by the plaintiff). Defendant's motion to dismiss the race claims should therefore be **DENIED as moot**.

5

*Id.* at 570.

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (citations omitted). When plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570; *accord Iqbal*, 556 U.S. at 678.

As noted, a court cannot look beyond the pleadings in deciding a Rule 12(b)(6) motion. *Spivey*, 197 F.3d at 774; *Baker*, 75 F.3d at 196. When a party presents "matters outside the pleadings" with a Rule 12(b)(6) motion to dismiss or in a response to the motion, a court has "complete discretion" to either accept or exclude the evidence for purposes of determining the motion. *Isquith ex rel. Isquith v. Middle S. Utils., Inc.*, 847 F.2d 186, 196 n.3 (5th Cir. 1988); *accord Gen. Retail Servs., Inc. v. Wireless Toyz Franchise, LLC*, 255 F. App'x 775, 783 (5th Cir. 2007); *see Walch v. Adjutant General's Dept. of Tex.*, 533 F.3d 289, 293-94 (5th Cir. 2008). However, "[i]f . . . matters outside the pleading[s] are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

Nevertheless, "pleadings" for purposes of a Rule 12(b)(6) motion include attachments to the complaint. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). Similarly, documents attached to a motion to dismiss or to a response to a motion to dismiss "are considered part of the pleadings, if

6

they are referred to in the plaintiff's complaint and are central to her claim[s]." *Collins*, 224 F.3d at 499 (quotations omitted); *accord Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 725 (5th Cir. 2003); *see Walch*, 533 F.3d at 293-94 (finding that reliance on documents attached to a response to a motion to dismiss was appropriate where the documents were "sufficiently referenced in the complaint"). It is also "clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007); *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994). Accordingly, documents falling in these three categories may be properly considered without converting the motion to dismiss into a motion for summary judgment.

Here, Plaintiff attached both charges of discrimination as well as the right to sue letters. (doc. 2 at 2-10.) He also attached a letter from Defendant informing him of the accident determination and his letter appealing that determination. (*Id.* at 11-16.) Because these documents are attached to his complaint, they are considered part of the pleadings. *In re Katrina Canal Breaches Litig.*, 495 F.3d at 205; *Collins*, 224 F.3d at 498.

**A.**     **Age Discrimination**

Defendant argues that Plaintiff's age discrimination claim should be dismissed as time-barred because he did not timely file an EEOC charge for each alleged incident of age discrimination.[3] (doc. 14 at 3.) Plaintiff alleges four distinct instances of age discrimination that occurred in January 2017, February 2017, August 2017, and March 2018. (doc. 11 at 1-3.)

---

[3] Defendant argues that dismissal of this claim is proper under Rule 12(b)(6) and Rule 12(c). (*See* doc. 14 at 5.) The standard under both rules is the same. *See Han v. Korea Express U.S.A., Inc.*, No. 3:13-CV-04815-P, 2014 WL 12531505, at *3 (N.D. Tex. June 3, 2014) (citing *In re Katrina Canal Breaches Litig.*, 495 F.3d at 205) (explaining that a statute of limitations defense asserted in a motion to dismiss under Rule 12(c) is "subject to the same standard as 12(b)(6) motions").

7

The ADEA makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). A prerequisite to a claim under the ADEA is the filing of an administrative charge with the EEOC. 29 U.S.C. § 626(d)(1); *Conaway v. Control Data Corp.*, 955 F.2d 358, 362 (5th Cir. 1992). To be timely, a plaintiff must file a charge with the EEOC within 180 days after the alleged unlawful action occurred. *See* 29 U.S.C. § 626(d)(1)(A); *Phillips v. Leggett & Platt, Inc.*, 658 F.3d 452, 455 (5th Cir. 2011). In a "deferral state" like Texas, the charge must be filed within 300 days of the alleged unlawful act. *See* 29 U.S.C. § 626(d)(1)(B)*; Conaway*, 955 F.2d at 362; *Martin v. Lennox Int'l Inc.*, 342 F. App'x 15, 18 (5th Cir. 2009) (per curiam). Consequently, "a Texas employee's ADEA claims are normally time-barred if the employee fails to file an age discrimination charge with the EEOC within 300 days from the date of the unlawful employment practice." *Tyler v. Union Oil Co.*, 304 F.3d 379, 384 (5th Cir. 2002); *Kirkland v. Big Lots Store, Inc.*, 547 F. App'x 570, 573 (5th Cir. 2013) (explaining that a suit based upon the untimely filing of an EEOC charge should be dismissed); *Campos v. Ins. & Bonds Agency of Texas, LLC*, No. SA-12-CV-00799-DAE, 2013 WL 321865, at *8 (W.D. Tex. Jan. 28, 2013) (citing *Barrow v. New Orleans S.S. Ass'n*, 932 F.2d 473, 476-77 (5th Cir. 1991)) ("Claims based upon an untimely administrative charge must be dismissed.").

The 300-day window for filing a charge of discrimination with the EEOC is not a jurisdictional prerequisite, "but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982); *Conaway*, 955 F.2d at 362. A plaintiff who does not file a charge within 300 days bears the burden

8

of showing a factual basis for tolling the limitations period. *Blumberg v. HCA Mgmt. Co.*, 848 F.2d 642, 644 (5th Cir. 1988), *cert. denied*, 488 U.S. 1007 (1989). Equitable tolling applies only in "rare and exceptional circumstances," however. *Teemac v. Henderson*, 298 F.3d 452, 457 (5th Cir. 2002) (quoting *Davis v. Johnson*, 158 F.3d 806, 811 (5th Cir. 1998)).

"A statute of limitations may support dismissal under Rule 12(b)(6) where it is evident from the plaintiffs pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like." *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003) (citations omitted); *Simmons v. Local 565 Air Transp. Div. Transp. Workers Union of Am. AFL-CIO*, No. 3:09-CV-1181-B, 2010 WL 2473840, at *4 (N.D. Tex. June 16, 2010) (citing *Kansa Reinsurance Co. v. Cong. Mortgage Corp. of Texas*, 20 F.3d 1362, 1366 (5th Cir. 1994) (explaining that a defendant may move for dismissal under Rule 12(b)(6) if the facts giving rise to a limitations "appear[ ] on the face of the complaint")); *Han,* 2014 WL 12531505, at *3 (granting the defendant's Rule 12(b)(6) motion where it was clear on the face of the complaint that the state law age discrimination claim was filed after the two-year statute of limitations).

Defendant argues that because the only EEOC charge asserting age discrimination was filed outside the limitations window, Plaintiff's ADEA claim should be dismissed as untimely. (doc. 14 at 3.) As noted, Plaintiff had 300 days from the date of the incident to file a charge with the EEOC because Texas is a deferral state.[4] *Conaway*, 955 F.2d at 362; *Martin*, 342 F. App'x at 18. The charge of age discrimination based on the August 14, 2017 incident was filed with the EEOC on

---

[4]Both of Plaintiff's charges are directed to the EEOC and the Texas Workforce Commission Civil Rights Division (TWCCRD) and include the following statement: "I want this charge filed with both the EEOC and the State or local Agency, if any." (doc. 2 at 4, 9.)

9

September 15, 2017,[5] well within the 300-day filing window. (doc. 2 at 4.)

As for the alleged incidents of age discrimination in January 2017, February 2017, and March 21, 2018, they are not referenced in either EEOC charge.[6] (doc. 11 at 1-3.) Notably, both 2017 events occurred within 300 days of the date of Plaintiff's first charge, and the 300-day deadline to file a charge of discrimination based on the March 2018 event has not yet elapsed. Because limitations is an affirmative defense, Defendant is not entitled to dismissal of any claims based on those incidents, unless the untimeliness of those claims appear from the face of the complaint. *Alexander v. Verizon Wireless Servs, LLC*, 875 F.3d 243, 249 (5th Cir. 2017); *Jones*, 339 F.3d at 366; *see, e.g., Clemmer v. Irving Indep. Sch. Dist.*, No. 3:13-CV-4997-D, 2015 WL 1757358, at *2 (N.D. Tex. Apr. 17, 2015) (explaining that a defendant is not entitled to dismissal a Title VII claim on its limitations defense "unless the plaintiff has pleaded [her]self out of court by admitting to all of the elements of the defense") (brackets in original and internal citations omitted). Because untimeliness is not apparent from the face of the pleadings, Defendant has not shown that Plaintiff's

---

[5] In his response, Plaintiff claims that the date of discrimination was August 28, 2017, but the EEOC incorrectly entered it as February 14, 2017. (doc. 17 at 1.) Even if February 14, 2017 is the date of the alleged discrimination, Plaintiff had until December 11, 2017, to file a charge. His charge on September 15, 2017, is still within Texas's 300-day filing deadline.

[6] Although he did not provide copies of EEOC charges that reference those incidents, "[a] plaintiff does not have a duty to anticipate a defendant's affirmative defense, assemble all documents potentially relevant to the defense, and make them exhibits to his complaint." *Darby v. Calumet Packaging*, LLC, No. 18-CV-0763, 2018 WL 5117027, at *4 (W.D. La. Oct. 4, 2018), *recommendation adopted by* 2018 WL 5116098 (W.D. La. Oct. 19, 2018). Exhaustion is not a jurisdictional requirement, however. *Davenport v. Edward D. Jones & Co.*, 891 F.3d 162, 167 (5th Cir. 2018) (explaining that "the exhaustion requirement under Title VII is merely a precondition to filing suit" and "is subject to waiver and estoppel"); *Davis v. Fort Bend Cty.*, 893 F.3d 300, 305-07 (5th Cir. 2018) ("Title VII's administrative exhaustion requirement is not a jurisdictional bar to suit but rather a prudential prerequisite under our binding precedent, and Fort Bend forfeited its exhaustion argument by not raising it in a timely manner before the district court."). Defendant has not expressly moved to dismiss any claim based on these incidents for failure to exhaust. Even if it had, it is not clear from the face of Plaintiff's pleadings that these claims have not been exhausted. See *Taylor v. Lear Corp.*, No. 3:16-CV-3341-D, 2017 WL 6209031, at *3 (N.D. Tex. Dec. 8, 2017) (denying the defendant's motion to dismiss for failure to exhaust administrative remedies because it would be improper for a court to conclude that a plaintiff has pleaded herself out of court by not mentioning the filing of any charge with the EEOC or the receipt of a right to sue letter in the complaint).

age discrimination claim is barred under the statute of limitations, and its motion to dismiss based on that affirmative defense should be denied. *See Zavala v. Carrollton-Farmers Branch Indep. Sch. Dist.*, No. 3:15-CV-1413-B, 2015 WL 9269416, at *4 (N.D. Tex. Dec. 21, 2015) (quoting *Alcoa*, 339 F.3d at 366) (refusing to dismiss a failure to promote claim where the court could not discern whether it fell outside the statute of limitations and was not "evident from the plaintiff's pleadings that the action is barred").

**B.     Retaliation**

Defendant argues that the complaint fails to allege a plausible claim of retaliation under the ADEA. (doc. 14 at 6.)

The ADEA makes it unlawful for employers to retaliate against an individual "for opposing acts of age discrimination, or for charging, testifying, assisting, or participating in any manner in an investigation, proceeding, or litigation under the ADEA." *Holt v. JTM Industries, Inc.*, 89 F.3d 1224, 1225 (5th Cir. 1996) (citing 29 U.S.C. § 623(d)). To establish a *prima facie* retaliation claim under the ADEA, the plaintiff must show (1) he engaged in activity protected by the ADEA; (2) an adverse employment action occurred; and (3) there was a causal connection between the protected activity and the adverse action. *Wooten v. McDonald Transit Ass'n. Inc.*, 788 F.3d 490, 496-497 (5th Cir. 2015). Though a plaintiff is not required to plead the *prima facie* case of retaliation at the motion to dismiss stage, he must plead sufficient facts on all of "the ultimate elements" of a retaliation claim to make his case plausible. *Jenkins v. State Workforce Comm'n*, 713 F. App'x 242, 245 (5th Cir. 2017) (citing *Chhim v. Univ. of Texas*, 836 F.3d 467, 470 (5th Cir. 2016) (explaining that the *prima facie* elements for retaliation are helpful in analyzing the sufficiency of the complaint)); *see also Flores v. Select Energy Servs., LLC*, 486 F. App'x 429, 432 (5th Cir. 2012) ("The elements of a

11

*prima facie* case are helpful, however, in framing what constitutes [a discrimination] claim.")*;* *Avalon Residential Care Homes, Inc. v. City of Dallas*, No. 3:11-CV-1239-D, 2011 WL 4359940, at *8 (N.D. Tex. Sept. 19, 2011) (holding that proving the *prima facie* case of retaliation is sufficient, but not necessary, to survive a motion to dismiss).[7]

### 1. *Adverse Employment Action*

Defendant argues that Plaintiff "fails to allege any materially adverse employment action taken against him" with respect to (a) the investigation of the October 21, 2017 bus incident and subsequent "preventable" accident determination, and (b) the confrontation and passenger complaint regarding his ability to hear on March 21, 2018. (doc. 14 at 7.)

It is well-established that an adverse employment action is an essential element of the *prima facie* case for age-based retaliation. *Heggemeier v. Caldwell Cty., Texas*, 826 F.3d 861, 867-69 (5th Cir. 2016). Unlike employment discrimination claims, which require the adverse action be an "ultimate employment decision," retaliation claims are governed by a less stringent standard. *Johnson v. Halstead*, No. 17-10223, -- F.3d --, 2018 WL 6627820, at *5 (5th Cir. Dec. 19, 2018) (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006)); *see also Porter v. Houma Terrebonne Hous. Auth Bd. of Comm'rs*, 810 F.3d 940, 945-46 (5th Cir. 2015) (explaining that the standard is "less demanding" than an "ultimate employment decision" and retaliation claims can be based on incidents occurring outside the workplace) (citations omitted); *Stringer v. N. Bolivar Consol. Sch. Dist.*, 727 F. App'x 793, 804 (5th Cir. 2018) ("The definition of an adverse

---

[7]Plaintiff's first charge of discrimination with the EEOC clearly satisfies the first element. *See Dollis v. Rubin*, 77 F.3d 777, 781 (5th Cir. 1995) (explaining that "there can be no question that [the employee's] retaliation claims satisfy the first element of the analysis, filing an administrative complaint is clearly protected activity"); *Kebiro v. Walmart*, 193 F. App'x 365, 368 (5th Cir. 2006) (same). Defendant does not contend that Plaintiff failed to engage in protected activity.

employment action in the retaliation context is broader than in the discrimination context."). The adverse action underlying an actionable retaliation claim is not limited to "ultimate employment decisions," such as hiring, granting leave, discharging, promoting or compensation. *Porter*, 810 F.3d at 945-46. Instead, it includes employer actions that a reasonable employee would consider "materially adverse," "which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington,* 548 U.S. at 57.

Although the standard is objective, "the significance of any given act of retaliation will often depend upon the particular circumstances. Context matters." *Burlington,* 548 U.S. at 69. Nevertheless, the retaliatory action must be "materially adverse" in order "to separate significant from trivial harms." *Id.* (citation omitted) (noting that "normally petty slights, minor annoyances, and simple lack of good manners will not create such deterrence"). To be clear, "[t]he anti-retaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm." *Id.* at 67.

    *a.* *Bus Accident Determination*

Plaintiff alleges that in retaliation for filing an EEOC charge, he is being subjected to "investigations into spurious claims of improper bus handling" overseen by the same individuals "who have show[n] discrimination against him." (doc. 12 at 4.) This conduct alone does not constitute an adverse employment action. *See Grice v. FMC Techs., Inc.*, 216 F. App'x 401, 407 (5th Cir. 2007) (holding that unjustified reprimands are considered "trivial" and not materially adverse in the retaliation context); *Earle v. Aramark Corp.*, 247 F. App'x 519, 524 (5th Cir. 2007) (holding that disciplinary write-ups and alleged retaliatory micro-managing of plaintiff's performance did not

13

constitute materially adverse employment actions).[8]  There are no allegations that Plaintiff has sustained any harm or injury from the outcome of that investigation. *See Burlington*, 548 U.S. at 67 (recognizing that the law does not protect against retaliation for trivial harms, but only those that produce an injury or harm); *see also Noack v. YMCA of Greater Houston Area*, 418 F. App'x 347 (5th Cir. 2011) (finding because the employee did not suffer any significant harm as a result of a written reprimand, it was not an adverse employment action).  A record of infraction or "written reprimand, without evidence of consequences, does not constitute an adverse employment action." *Thibodeaux-Woody v. Houston Cmty. Coll.*, 593 F. App'x 280, 286 (5th Cir. 2014) (citing *Hernandez v. Johnson*, 514 F. App'x 492, 499 (5th Cir. 2013).

Further, although he claims that the "preventable accident" determination was unjustified, Plaintiff fails to allege that a reasonable person would have been dissuaded from make a charge of discrimination as a result of that investigation and subsequent determination. *DeHart v. Baker Hughes Oilfield Operations, Inc.*, 214 F. App'x 437, 442 (5th Cir. 2007) (holding that a written disciplinary warning for insubordination and being argumentative would not have "dissuaded a reasonable worker from making or supporting a charge of discrimination"); *Perez v. Brennan*, No. 1:17-CV-00043, 2017 WL 5534244, at *6 (S.D. Tex. Nov. 17, 2017) (citing *Burlington*, 548 U.S. at 68) (explaining that a "reasonable person" would not find a letter of warning for work absences

---

[8] *See, e.g., Gallentine v. Hous. Auth.*, 919 F. Supp. 2d 787, 807 (E.D. Tex. 2013) (holding that a verbal warning by a supervisor cannot satisfy the second prong of a prima facie case of retaliation);*Thompson v. Exxon Mobil Corp.*, 344 F. Supp. 2d 971, 985 (E.D. Tex. 2004) (explaining that, without more, there is no claim for retaliation when the alleged adverse employment action is an employer's finding that an employee was responsible for a crane accident); *Bui v. Horseshoe Entm't*, No. CIV.A.07-1712, 2009 WL 587084, at *12 (W.D. La. Mar. 5, 2009), *aff'd by* 380 F. App'x 445 (5th Cir. 2010) (finding plaintiff's assertions that her supervisors "created a paper trail of written warnings to get rid of her" and subjected her to negative treatment at work were not adverse employment actions in the retaliation context); *Roberts v. Unitrin Specialty Lines Ins. Co.*, No. 3:06-CV-0380-B, 2008 WL 3832223, *8 (N.D. Tex. Aug. 13, 2008) (citing *Burlington*, 548 U.S. at 68) (explaining that allegations of being falsely blamed for a supervisor's mistake and receiving a disciplinary notice shortly after the plaintiff engaged in a protected activity is not an adverse employment action).

"materially adverse"). Because the investigation and "preventable accident" finding by Defendant does not amount to an adverse employment action for purposes of retaliation under the ADEA as a matter of law, Plaintiff's retaliation claim based on this allegation should be dismissed for failure to state a claim. *See Williams*, 2017 WL 4404461, at *8 (dismissing ADEA retaliation claim under Rule 12(b)(6)).

        b.        March 21, 2018 Incident[9]

As noted, Plaintiff alleges that on March 21, 2018, a passenger falsely claimed that he skipped her bus stop even though she had rung the bus stop notification bell. (doc. 11 at 2-3.) He states that a supervisor "proceeded to berate [him] on his hearing" and "threatened to have him replaced with someone capable of hearing the bell." (*Id.* at 3.)

Disparaging comments and idle threats of termination by supervisors do not rise to the level of adverse employment action. *See Brooks v. Houston Indep. Sch. Dist.*, 86 F. Supp. 3d 577, 586 (S.D. Tex. 2015) (concluding that an unimplemented decision to discipline an employee is not a materially adverse employment action to support a retaliation claim); *Brandon v. Sage Corp.*, 61 F. Supp.3d 632, 649-50 (W.D. Tex. 2014) (concluding that threatened pay cuts, which never came to fruition, did not constitute a materially adverse employment action). Nevertheless, Plaintiff alleges that this incident is one of the "accusations" that is "part of his record," which will be "reviewed for

---

[9] Because the March 21, 2018 incident occurred after the EEOC charge was filed, this incident could also be construed as part of Plaintiff's retaliation claim. *See Garrison v. Tex. S. Univ.*, No. H-11-2368, 2011 WL 4457374, at *6 (S.D. Tex. Sep. 21, 2011) ("Because the Plaintiff in this case alleges that Defendant's retaliation occurred 'after [she] raised a complaint of discrimination,' she has sufficiently stated that her retaliation claim grew out of her discrimination charge."). Further, Plaintiff may still pursue a retaliation claim even if these incidents were not included in a separate charge to the EEOC. If a retaliation claim grows out of an earlier charge, it is "unnecessary for a plaintiff to exhaust administrative remedies prior to urging [that] retaliation claim" in the Fifth Circuit. *Gupta v. East Tex. State Univ.*, 654 F.2d 411, 414 (5th Cir. 1981). "Under *Gupta*, retaliation that occurs as a result of filing an EEOC charge can be included in a Title VII case in district court without filing a new charge." *Smith v. Dallas Cnty. Hosp. Dist.*, No. 3:13-CV-0792-G (BN), 2014 WL 645248, at *4 (N.D. Tex. Feb. 19, 2014) (citing *id.*).

raises and career advancement." (doc. 11 at 3.) He further alleges that he was issued a decree "to not call dispatch again for any reason." (*Id.*) He contends that the ability to contact dispatch is a "vital and important tool" and is "essential to [his] job duties." (*Id.*) These allegations evince employer actions that could dissuade a reasonable employee from filing a charge of discrimination with the EEOC. *See Burlington*, 548 U.S. at 57.

Plaintiff has therefore alleged facts of a plausible adverse employment action supporting the second *prima facie* prong of retaliation for the March 2018 incidents.

### 2.   *Causal Link*

Defendant claims that there are no facts to support a causal link between any adverse employment action and the filing of Plaintiff's EEOC charge in September 2017. (doc. 14 at 7.)

To ultimately succeed on its retaliation claim, Plaintiff must prove that a causal link existed between the protected activity and the adverse action. *Davis v. Fort Bend Cty.*, 765 F.3d 480, 489 (5th Cir. 2014), *cert. denied sub nom. Fort Bend Cty., Tex. v. Davis*, 135 S. Ct. 2804 (2015). Although the *prima facie* element of causation appears identical to the ultimate question of whether the defendant unlawfully retaliated against the plaintiff, the standard for establishing a causal link at the *prima facie* case stage is much less stringent. *Long v. Eastfield Coll.*, 88 F.3d 300, 305 n.4 (5th Cir. 1996). A causal link is established if the facts show that the adverse employment action "was based in part on knowledge of the employee's protected activity." *Sherrod v. American Airlines, Inc.*, 132 F.3d 1112, 1122 (5th Cir. 1998). Again, the plaintiff is not required to show that his protected activity was the sole factor in motivating the employer's challenged decision. *Long*, 88 F.3d at 305 n.4; *accord Gee v. Principi*, 289 F.3d 342, 345 (5th Cir. 2002); *Evans v. Houston*, 246 F.3d 344, 354 (5th Cir. 2001). To satisfy the causation prong, the plaintiff's allegations must

16

support the inference that "the employment decision and his protected activity were not wholly unrelated." *Medina v. Ramsey Steel Co.*, 238 F.3d 674, 684 (5th Cir. 2001) (internal citations omitted).

The temporal relationship "between protected activity and alleged retaliation is sometimes enough to establish causation at the *prima facie* stage." *Porter*, 810 F.3d at 948-49. This is particularly the case when the protected activity and the adverse employment action occur "very close" in time. *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001); *see Evans*, 246 F.3d at 354 (internal citations omitted) ("Close timing between an employee's protected activity and an adverse action against [him] may provide the "causal connection" required to make out a *prima facie* case of retaliation."). The Fifth Circuit has found gaps of two to four months sufficiently close to support an inference of a causal link. *Richard v. Cingular Wireless LLC*, 233 F. App'x 334, 338 (5th Cir. 2007); *Evans*, 246 F.3d at 354 (noting that "a time lapse of up to four months has been found sufficient"); *Stroud v. BMC Software, Inc.*, No. 07-20779, 2008 WL 2325639, at *6 (5th Cir. June 6, 2008) (unpublished case) (explaining that this circuit had found temporal proximity of up to four months to be sufficient to show a causal link); *but see Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 471-72 (5th Cir. 2002) (noting a five-month lapse, by itself, does not support an inference on a causal link); *Barkley v. Singing River Electric Power Ass'n*, 433 F. App'x 254, 260 n.10 (5th Cir. 2011) (noting the Supreme Court has cited cases finding three and four month gaps insufficient).

Here, Plaintiff generally alleges that the "accusations" that are part of his record as well as the decree banning him from contacting dispatch are instances of retaliation "for [his] reporting of harassment,"(doc. 11 at 3), but it is not clear when the "accusations" were entered into his employment record, or when the dispatch ban decree was issued. Nevertheless, a plaintiff need not

17

make out a *prima facie* case of retaliation to survive a motion to dismiss for failing to state a claim. *Swierkiewicz v. Sorema N.A.*, 534 U.S. at 510-12 (2002). The Fifth Circuit has cautioned district courts to avoid improperly substituted an "evidentiary standard" for a "pleading requirement" at the pleading stage. *Raj v. Louisiana State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013) (citing *id.*) (internal quotations omitted); *see also Briscoe v. Jefferson County*, 500 F. App'x 274, 278 (5th Cir. 2012) ("[C]ourts must take care not to recast evidentiary standards as pleading requirements.").[10]

As noted, Plaintiff is not required to establish the *prima facie* elements of retaliation at the pleading stage, provided that he has pled sufficient facts on all of "the ultimate elements" of a retaliation claim to make his case plausible. *See Raj*, 714 F.3d at 331; *Chhim*, 836 F.3d at 470. Viewing the complaint in a light most favorable to Plaintiff, which the Court must at this stage of the proceedings, his claims of ongoing retaliation sufficiently plead a plausible causal link based on temporal proximity of the adverse acts and the protected activity. *See Porter*, 810 F.3d at 948-49. Because Plaintiff has alleged a plausible retaliation claim based on the "accusations" and dispatch ban incidents, Defendant's motion to dismiss these claims should be denied.

### III.  RECOMMENDATION

Defendant's motion to dismiss the age discrimination claim should be **DENIED,** its motion to dismiss the race discrimination claim should be **DENIED as moot,** and its motion to dismiss the retaliation claim should be **GRANTED IN PART** and **DENIED IN PART**. Plaintiff's retaliation

---

[10] As further explained by the Supreme Court:

> [I]f a plaintiff is able to produce direct evidence of discrimination, he may prevail without proving all the elements of a *prima facie* case. . . . It thus seems incongruous to require a plaintiff, in order to survive a motion to dismiss, to plead more facts than he may ultimately need to prove to succeed on the merits if direct evidence of discrimination is discovered.

*Swierkiewicz*, 534 U.S. at 511-12.

claim based on the October 21, 2017 bus accident determination should be **DISMISSED with prejudice** for failure to state a claim. All of Plaintiff's other claims should remain pending.

**SO RECOMMENDED** on this 31st day of December, 2018.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE